(C. D. 1895) .

CHAS. H. DEMAREST, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 27, 1957)

*Strauss & Hedges* (*Edward N. Glad* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The plaintiff, in this case, imported into the United States an article described on the invoice as "twisted seagrass." A sample is before us as plaintiff's illustrative exhibit 1, and appears to be a two-strand cord, about three-sixteenths of an inch thick, each strand apparently consisting of pieces of sea grass twisted together, and the two strands tightly twisted around each other, apparently when wet, so that, presumably, they dried that way.

Aside from sea grass furniture, provided for in paragraph 409 of the Tariff Act of 1930, sea grass is provided for by name in two other provisions of that act, viz, in paragraph 1540 of the act, as modified by the Presidential proclamation relating to the general agreement, T. D. 51802, levying duty assessment of 5 per centum ad valorem on "sea grass * * * if manufactured," and in paragraph 1537 (a), imposing a duty of 25 per centum ad valorem on "Manufactures of * * * sea grass." The collector took duty under the latter provision, and the claim relied upon in the protest is under the former provision.

The record shows that the merchandise is known variously as twisted sea grass, sea grass cord, Hong Kong rope, and Hong Kong grass, and that it is used as material in the manufacture of baskets and furniture. The record does not show the lengths in which it was imported, but, presumably, they were continuous lengths, the invoices showing that it was imported in bales of 1 picul, or 133⅓ pounds.

The plaintiff contends that the merchandise consists of sea grass which has been advanced over its crude state to the point where it is a manufactured sea grass material, but has not yet reached the stage where it may be considered to be a manufacture of sea grass. The issue thus raised is one which has been before this and our appellate court many times, that is, the distinction between a material, manufactured, and a manufacture of that material.

Merchandise of similar description and use to those of the merchandise at bar has previously been the subject of decision by this and our appellate court. In the brief filed on behalf of the defendant are cited *Cowen, Heineberg Co.* v. *United States,* 30 Treas. Dec. 193, Abstract 39205; *C. H. Demarest* v. *United States,* 31 Treas. Dec. 185, Abstract 40119; *Barham et al.* v. *United States,* 11 Ct. Cust. Appls. 536, T. D. 39679; and *O'Connor-Harrison & Co. et al.* v. *United States,* 15 Ct. Cust. Appls. 214, T. D. 42239.

In each of those cases, merchandise described as sea grass cords or braids was held to be a manufacture of sea grass, rather than sea grass, manufactured, on the ground that out of the original crude or unmanufactured sea grass an article having a new name, cord, or braid, was created by manufacturing effort, and that the new article had a use which the original sea grass did not have, i. e., in the manufacture of baskets and furniture.

In the brief filed on behalf of plaintiff, its counsel suggests, however, that, by reason of later cases, to wit, *United States* v. *Wilkinson Process Rubber Sales Corp.* (cross-appeals), 22 C. C. P. A. (Customs) 60, T. D. 47051, and *United States* v. *Nippon Co. et al.* (cross-appeals), 32 C. C. P. A. (Customs) 164, C. A. D. 303, the distinction between a material, manufactured, and manufactures of that material was made clearer and more definite, and that, as the result of the application of the principles of those cases, a different result should obtain in the case of the classification of twisted sea grass from that in the cases cited by defendant.

A recent expression by our appellate court would seem to support plaintiff's suggestion of reconsideration of the matter. In *United States* v. *C. J. Tower & Sons,* 44 C. C. P. A. (Customs) 1, C. A. D. 626, our appellate court said:

For it is now thoroughly established that a provision for a named material "manufactured" and one for "manufactures" of that material have different tariff meanings. *United States* v. *Nippon Co. et al.,* 32 C. C. P. A. (Customs)

164, C. A. D. 303. While to constitute an article a manufacture, it may be necessary to convert the article into an entirely different article, it is only necessary that the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material, to be manufactured. (See *Nippon* case, *supra*, and other cases cited therein.)

Plaintiff points to evidence in the record to the effect that the only known use for untwisted or crude sea grass is as a material to make twisted sea grass; that twisted sea grass is the crudest form in which sea grass is imported into the United States; and that its only use is in the manufacture of baskets and furniture. Plaintiff suggests that, under such circumstances, if twisted sea grass is not sea grass, manufactured, "it is hard to conceive what product was meant by Congress to be included in such terminology."

Some force is lent to plaintiff's argument by the fact that the third provision in the tariff act which uses the term "sea grass" is for furniture, wholly or in chief value of sea grass, in paragraph 409, as already noted. Congress evidently considered the material of which such furniture is made to be sea grass, and not a new and different material having a different name from sea grass. As established by the record, the material of which such furniture is made is twisted, corded, or braided sea grass, and Congress must have considered that, in such state, it was merely a material having the identity of sea grass, albeit advanced or manufactured so that it might be used in the manufacture of furniture.

Not controlling, but corroborative of this view, is the fact that,in the Summary of Tariff Information, 1929, compiled by the Tariff Commission for use of the Congress when the bill which ultimately became the Tariff Act of 1930 was under consideration, volume 14, page 2101, with reference to the provision for "sea grass, eelgrass, and seaweeds, if manufactured," it was reported that—

\* \* \* Sea grass and eelgrass, submerged sea plants, are used in upholstery manufacturing.

Webster's New International Dictionary, second edition, 1945, defines "upholstery" as—

Furniture or interior fittings, as hangings, cushions, curtains, coverings, etc., covered or made with textile materials, leather, and the like; *esp.*, *material used to* stuff or *cover furniture*. [Italics supplied.]

We do not think that a hard and fast rule, applicable to all cases and all situations, can be laid down with respect to the distinction between a material, manufactured, and a manufacture of the material. Thus, in the case at bar, the merchandise is generally known as twisted sea grass, retaining the name "sea grass" but qualified by the adjective "twisted." In that sense, it has not acquired a new name. It is also known as "sea grass cord," an appellation consisting of a new noun (or name) and having "sea grass" as a modifying adjective.

Also, by the twisting or cording, it acquired a new use, in the manufacture of furniture and baskets, but it would be difficult to conceive of any manufacture applied to a material which would not enhance its use in some way.

We think none of these facts is necessarily controlling of its classification, but that the overall picture of its status as to its qualities and uses must be considered, as also, as hereinbefore noted, other relative tariff classifications.

So considered, it is apparent that, by the twisting or cording of the sea grass at bar, the identity of the material sea grass was not destroyed, but that it continuously retains that identity until it becomes an entirely different article, of which furniture and baskets are examples. It is, therefore, not a manufacture of sea grass, but sea grass, manufactured.

Judgment will, therefore, issue sustaining the protest claim for duty under paragraph 1540, as modified.